Opinion issued August 27, 2015



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00332-CR

———————————

**DERRICK LEE THOMAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 262nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1386629**

---

## MEMORANDUM OPINION

A jury found appellant, Derrick Lee Thomas, guilty of the felony offense of possession of a controlled substance, namely cocaine, weighing less than one

gram.[1]   After appellant pleaded true to the allegations in two enhancement paragraphs that he had twice been previously convicted of felony offenses, the trial court assessed his punishment at confinement for five years.   In four issues, appellant contends that the evidence is legally insufficient to support his conviction and the trial court erred in denying his motion to suppress evidence, admitting into evidence certain exhibits, and giving "the jury an improper, misleading, and confusing instruction which lessened the State's burden of proof."

We modify the trial court's judgment and affirm as modified.

## Background

Houston Police Department ("HPD") Officer M. Parker testified that on May 6, 2013, while patrolling the north side of Houston, he saw a car failing to signal as it made a left turn.   He initiated a traffic stop of the car, parked his patrol car behind the stopped car, and approached the driver's side of the car.   Looking into the car with his flashlight, Parker noted that it contained two occupants, appellant and Ed Galloway.   He then asked appellant, who was the driver, for his driver's license.

While speaking with appellant, Officer Parker noticed that he appeared to be "very nervous" and his hands were "shaking."   Parker also saw that appellant's right hand was "cuffed," i.e., "[t]he last two fingers [on his right hand] were curled

---

[1]   *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(5) (Vernon Supp. 2014), §§ 481.102(3)(D), 481.115(a), (b) (Vernon 2010).

up as if he was holding onto something or concealing something." Based on his previous experience with "people conceal[ing] narcotics," Parker suspected that appellant "was concealing" a "type of narcotic" "in his right hand."

Officer Parker further testified that after he requested appellant's driver's license, appellant "leaned forward to retrieve his wallet" from "[h]is back right pocket." As he did so, "his right hand with the cuffed fingers, went down towards his right side and . . . [his] right fingers opened and . . . he dropped something near his right thigh." Appellant then proceeded to give Parker his driver's license, and Parker "asked him to exit the vehicle" because Parker "believed that [appellant] was sitting on what[] . . . he [had] dropped."

As appellant exited the car, Officer Parker saw "two small white crack rocks" in appellant's car seat. He saw "the crack rocks right . . . when [appellant] got out" of the car. And he explained that he suspected that the "rocks" in appellant's car seat were crack rocks because he "had seen [crack rocks] in the past."

After appellant exited the car, Officer Parker took him to his patrol car and "plac[ed] him in the backseat." Parker did not handcuff appellant, and he was not "under arrest." Parker then returned to appellant's car to "speak to the passenger," Galloway.

3

When Officer Parker asked Galloway to "step out" of the car, he noticed that Galloway "was mumbling his words as if he was concealing something in his mouth." Based on his previous experience, Parker suspected that Galloway was "concealing narcotics in [his] mouth," and he asked Galloway to open his mouth, which he did "briefly." However, Galloway then quickly "shut his mouth and began to chew." Galloway disobeyed Parker's command to "spit out whatever he had in his mouth," and he began "struggling" with Parker. Parker was able to handcuff Galloway, but he was not able to recover anything from his mouth. He then searched Galloway for weapons and "more narcotics," and he recovered "a screwdriver with what appeared to be numerous amounts of white residue." Parker explained that because he believed that the screwdriver was a "push rod," i.e., "[a] long, slender object that is used to remove the brillo from a crack pipe," he seized it. He then placed Galloway in the backseat of his patrol car with appellant.

Officer Parker returned to appellant's car to retrieve the "two white rocks in the front [driver's] seat" that he had previously seen. He field tested the two rocks, and both tested positive for cocaine. Parker explained that the area in which he had stopped appellant's car was known for "high amounts of narcotic activity," and appellant had "control," "care," and "custody of the area" from where Parker had seized the crack rocks.

4

In regard to the seized evidence, and in particular the crack rocks, Officer Parker explained that he "tagged" the evidence in "the narcotics operation and control center," approximately "[a]n hour" or an "hour and a half" after he arrested appellant. Subsequently, the crack rocks were "transport[ed]" "to the lab" for testing. On the day of trial, Parker "picked [the evidence] up from the lab" and brought it to court. After the first day of trial and prior to their admission into evidence, Parker took the crack rocks "back to the crime lab and resealed them and turned them back in." The following day, he again retrieved the crack rocks and brought them to the courtroom, where the trial court admitted them into evidence.

Rosaura Rodriguez, a criminalist specialist at the HPD crime laboratory, testified that her job is to "receive and . . . analyze unknown substances for the presence of a controlled substance." She explained that evidence that requires testing is "received from a section [at the lab] called centralized evidence receiving." Prior to testing, Rodriguez "check[s] the envelope . . . [containing] the evidence to make sure there's a seal on [it]." She then takes the evidence to her work area to analyze it.

In this case, Rodriguez received a sealed envelope containing the two crack rocks. Once she opened the sealed envelope, she found "a sealed Ziploc [bag], which contain[ed] another Ziploc [bag], which contain[ed] a beige chunk substance." Rodriguez administered a screening test that indicated that the "beige

5

chunk substance" "could possibly be cocaine." She then administered an "instrumental test," which identified the substance as cocaine, weighing "0.18 grams." After she completed her analysis, Rodriguez "sealed the evidence inside of a Ziploc" bag, placed it "inside of the evidence envelope," and "sealed the evidence envelope to be returned to centralized evidence receiving," "where it was then stored in a vault." She explained that she knew that the substance admitted into evidence at trial was the same substance that she had tested because the envelope that contained the substance had written upon it the "incident number" and her initials.

### Sufficiency of Evidence

In his fourth issue, appellant argues that the evidence is legally insufficient to support his conviction because it does not establish that he "exercised actual care, custody, control or management over the two crack rocks of cocaine" Officer Parker discovered in his car.

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due process safeguard, ensuring only the rationality of the trier

6

of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. However, our duty requires us "to ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

A person commits the offense of possession of a controlled substance if he "knowingly or intentionally possesses" less than one gram of cocaine. TEX. HEALTH & SAFETY CODE ANN. § 481.002(5) (Vernon Supp. 2014), §§ 481.102(3)(D), 481.115(a), (b) (Vernon 2010). To prove that appellant committed this offense, the State had to establish beyond a reasonable doubt that he exercised control, management, or care over the cocaine and knew that it was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (defining possession as "actual care, custody, control, or management"). Although the State need not prove exclusive possession of the cocaine, it must establish that a defendant's connection with the contraband is more than fortuitous. *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006); *Wiley v. State*, 388 S.W.3d 807, 813 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). When a defendant is not in

exclusive possession of the place where contraband is found, the State must show additional affirmative links between the defendant and the contraband. *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.] 1981); *Kibble v. State*, 340 S.W.3d 14, 18 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). Mere presence in the same place as contraband is insufficient, by itself, to establish actual care, custody, or control. *Evans*, 202 S.W.3d at 162. But, presence or proximity to contraband, when combined with other direct or circumstantial evidence, may be sufficient to establish possession. *Id.*

Texas courts have recognized that the following non-exclusive "affirmative links" may be sufficient, either singly or in combination, to establish a person's possession of narcotics: (1) the defendant's presence when a search is conducted; (2) whether the narcotics were in plain view; (3) the defendant's proximity to and the accessibility of the narcotics; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of narcotics; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the narcotics were found; (12) whether the place where the narcotics

8

found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Id.* at 162 n.12. It is not the number of links that is dispositive, but rather, the "logical force" of the evidence, both direct and circumstantial, is dispositive to show possession. *Id.*; *James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).

Appellant argues that "the evidence is legally insufficient to support the jury's finding that [he] exercised actual care, custody, control or management over the two crack rocks of cocaine discovered during the warrantless search" of his car because "Officer Parker admit[ed] that he did not see what, if anything, [appellant] dropped to his side when he reached and obtained his wallet."

Here, several links establish that appellant had possession of the two crack rocks seized by Officer Parker. First, when Parked approached appellant's car after initiating a traffic stop, he saw appellant in the driver's seat, where he ultimately saw the crack rocks. *See Deshong*, 625 S.W.2d at 329 (evidence of possession sufficient where defendant driving car in which marijuana found in plain view); *Martinets v. State*, 884 S.W.2d 185, 188 (Tex. App.—Austin 1994, no pet.) (evidence sufficient to "link[]" marijuana found in car to defendant-driver); *see also Stout v. State*, 426 S.W.3d 214, 218–19 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (evidence established "link[]" between defendant and gun, where he

9

"was driving the vehicle at the time the gun was found"). Second, Parker noted that appellant appeared to be "very nervous" and his hands were "shaking." *See Dixon v. State*, 918 S.W.2d 678, 681 (Tex. App.—Beaumont 1996, no pet.) (defendant's "extreme nervousness" "factor tending to link [him] to the contraband"); *see also James v. State*, 264 S.W.3d 215, 219–20 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (evidence sufficient to link defendant to gun where he "was nervously looking around"). Parker also saw that appellant's right hand was "cuffed," i.e., "[t]he last two fingers [on his right hand] were curled up as if he was holding onto something or concealing something," like a "type of narcotic."

Third, when appellant "leaned forward to retrieve his wallet" from "[h]is back right pocket" for Officer Parker, "his right hand with the cuffed fingers, went down towards his right side and . . . [his] right fingers opened and . . . he dropped something near his right thigh." *See Kennedy v. State*, No. 03-04-00101-CR, 2005 WL 1034114, at *7 (Tex. App.—Austin May 5, 2005, no pet.) (mem. op., not designated for publication) ("reaching down under [car] seat" constituted "furtive gesture[]" linking defendant to bag of marijuana); *see also James*, 264 S.W.3d at 219–20 (evidence linked defendant to gun where he "was seen gesturing as though he was placing something under the [car] seat"). Parker then asked appellant to

10

"exit the vehicle" because he "believed that he was sitting on what[] . . . he [had] dropped."

Fourth, as appellant exited the car, Officer Parker saw the "two small white crack rocks" in appellant's car seat. *See Deshong*, 625 S.W.2d at 329 (marijuana "conveniently accessible" and in close proximity to defendant where found "on the floorboard directly in front of driver's seat" in car defendant driving); *Mitchell-Vrtis v. State*, No. 14-10-00380-CR, 2011 WL 1258828, at *2 (Tex. App.—Houston [14th Dist.] Apr. 5, 2011, no pet.) (mem. op., not designated for publication) ("strong links between [defendant] and the controlled substance" where defendant "person closest to the drugs" found in car's "driver's side-door compartment"); *Robinson v. State*, 174 S.W.3d 320, 326–27 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) ("The location of the cocaine . . . suggests that [defendant] had knowledge of and exercised control over the cocaine . . . ."). And Parker saw "the crack rocks right . . . when [appellant] got out" of the car. *See Deshong*, 625 S.W.2d at 329 ("[M]arihuana was in open view once the car door had been opened by the officer."); *Mitchell-Vrtis*, 2011 WL 1258828, at *2 ("strong link[]" where "first crack rock that [law enforcement officer] discovered was in plain view near [defendant]").

Finally, appellant was present when Officer Park retrieved the "two white rocks in the front [driver's] seat" of appellant's car. *See Mitchell-Vrtis*, 2011 WL

11

1258828, at *2 (defendant placed in law enforcement officer's patrol car "present when the search was conducted"); *Robinson*, 174 S.W.3d at 327 ("[B]ecause the cocaine was found in an enclosed space," the truck, defendant was "affirmatively linked to the cocaine.").

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the jury could have reasonably found that appellant exercised actual care, custody, control, or management over the cocaine found in his seat in the car that he was driving. Accordingly, we hold that the evidence is legally sufficient to support appellant's conviction of the offense of possession of a controlled substance, namely cocaine, weighing less than one gram.

We overrule appellant's fourth issue.

## Suppression of Evidence

In his first issue, appellant argues that the trial court erred in denying his motion to suppress evidence because "[O]fficer Parker articulated nothing more than a hunch or suspicion that [he] was in possession of a controlled substance and therefore failed to justify his search of [appellant's] vehicle as based upon probable cause or incident to arrest."

We review a trial court's denial of a motion to suppress evidence under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of

12

discretion and the trial court's application of the law to the facts de novo. *Id.* The trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility and may choose to believe or disbelieve all or any part of the witnesses' testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). If, as in this case, the trial court makes express findings of fact, we review the evidence in the light most favorable to the trial court's ruling and determine whether the evidence supports the fact findings. *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). A trial court's findings on a motion to suppress may be written or oral.[2] *See State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006); *State v. Groves*, 837 S.W.2d 103, 105 n.5 (Tex. Crim. App. 1992). We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Valtierra*, 310 S.W.3d at 447. We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.* at 447–48.

---

[2] When reviewing a motion to suppress, oral findings of fact may be considered as findings of fact on the record and are given due deference. *See State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006) (recording of trial court's findings and conclusions from suppression hearing required, whether written or stated on record); *Flores v. State*, 177 S.W.3d 8, 13 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (noting trial court "made oral findings of fact on the record" at motion to suppress hearing).

Prior to trial, appellant moved to suppress "[a]ny and all tangible evidence seized by law enforcement officers or others in connection with [his] detention and arrest," namely the crack rocks that Officer Parker found in his car. During trial, appellant "reurge[d]" his motion to suppress when the State offered into evidence the crack rocks, asserting that there was a "lack of probable cause" for Parker's search. The trial court denied appellant's motion, "find[ing] that there was probable cause" and "the cocaine was in plain view." It further found Parker's "testimony regarding the traffic stop and his observations [to be] credible and undisputed."

Appellant "concedes [on appeal] that there was probable cause to conduct a traffic stop for failure to signal a left hand turn, [and] . . . [a]ccordingly, [O]fficer Parker had sufficient basis to place [a]ppellant under arrest for that offense." However, he asserts that Parker's observation of his "nervous demeanor and the manner in which he cuffed his fingers as he reached for his wallet to obtain his driver's license was not sufficient articulation that criminal conduct was afoot." In other words, according to appellant, "[t]here was simply nothing before [O]fficer Parker that would rise to the level of reasonable suspicion that would allow him to continue to detain [appellant] . . . and certainly insufficient probable cause that authorized [O]fficer Parker's subsequent search of [appellant's] vehicle."

14

The Fourth Amendment of the United States Constitution and Article I, Section 9 of the Texas Constitution protect against unreasonable searches and seizures. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *State v. Betts*, 397 S.W.3d 198, 203 (Tex. Crim. App. 2013). A search conducted without a warrant issued upon probable cause is per se unreasonable subject to only a few specifically established and well-delineated exceptions. *See Reasor v. State*, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000).

Notably, however, contraband seen in "plain view" may be seized without a warrant. *See Texas v. Brown*, 460 U.S. 730, 736–39, 103 S. Ct. 1535, 1540–42 (1983); *see also Horton v. California*, 496 U.S. 128, 133–34, 110 S. Ct. 2301, 2306, (1990) ("If an article is already in plain view, neither its observation nor its seizure . . . involve[s] any invasion of privacy."). Simply put, the observation of evidence located in "plain view" does not constitute a search subject to Fourth Amendment protection. *See Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000); *Long v. State*, 532 S.W.2d 591, 594 (Tex. Crim. App. 1975); *see also Swarb v. State*, 125 S.W.3d 672, 680 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd).

The "plain view" doctrine requires that law enforcement officers: (1) be legally present when making their observation and (2) have probable cause to associate any visible evidence with criminal activity. *Walter*, 28 S.W.3d at 541. In determining whether the officer was legally present, "the Supreme Court

15

requires . . . 'the officer [to] . . . not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed.'" *Id.* (quoting *Horton*, 496 U.S. at 136, 110 S. Ct. at 2308). A law enforcement officer need not have actual knowledge that an observed item is contraband in assessing whether it constitutes evidence of criminal activity, but he must have probable cause to connect the item with criminal activity. *Brown*, 460 U.S. at 741–42, 103 S. Ct. at 1543; *Joseph v. State*, 807 S.W.2d 303, 308 (Tex. Crim. App. 1991). An officer may use his training and experience in determining whether an item seen in plain view constitutes contraband. *Brown*, 460 U.S. at 746, 103 S. Ct. at 1545–46 (Powell, J., concurring) (citing *United States v. Cortez*, 449 U.S. 411, 418, 101 S. Ct. 690, 695 (1981)); *Nichols v. State*, 886 S.W.2d 324, 326 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

Here, Officer Parker initiated a traffic stop of appellant's car after seeing him commit a traffic violation by failing to signal while making a left turn. *See* TEX. TRANSP. CODE ANN. § 545.104(a), (b) (Vernon 2011); *see also id.* § 542.301 (Vernon 2011) (violation of provision of Transportation Code title 7, subtitle C constitutes misdemeanor offense). And appellant concedes that Parker legally initiated the stop. *See Walter*, 28 S.W.3d at 542 ("[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").

16

Further, after observing appellant commit a traffic violation, Officer Parker legally approached appellant's car, looked into it using a flashlight, and asked appellant for his driver's license and to step out of the car. *See Brown*, 460 U.S. at 739–40, 103 S. Ct. at 1542; *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S. Ct. 330, 333 (1977); *Duff v. State*, 546 S.W.2d 283, 286–87 (Tex. Crim. App. 1977); *see also Hopkins v. State*, No. 01-10-01098-CR, 2012 WL 344908, at *3 (Tex. App.—Houston [1st Dist.] Feb. 2, 2012, pet. ref'd) (mem. op., not designated for publication) ("A police officer's observation of a traffic violation establishes probable cause to stop a car and, thus, provides the officer with a lawful vantage point from which she can look through the windows of a car into its interior."). It was after appellant "step[ped] out of the car" that Parker saw, from his lawful vantage point, "two small white crack rocks" in plain view on appellant's car seat.

Officer Parker explained that he suspected that the "two small white . . . rocks" were crack rocks because he "had seen [crack rocks] in the past," was, at the time, patrolling in an area known "for high amounts of narcotic activity," and had previously "seen people conceal[ing] narcotics" as appellant had tried to do by "cuff[ing]" his right hand. *See Hill v. State*, 303 S.W.3d 863, 874 (Tex. App.—Fort Worth 2009, pet. ref'd) (law enforcement officers, "based on their experience and training, immediately identified what they believed to be crack cocaine" in plain view). Thus, based on his training and experience as a

police officer, Parker had probable cause to associate the "two small white . . . rocks" that he saw in appellant's car seat with criminal activity.

Based on the foregoing, the trial court could have reasonably concluded that Officer Parker's "plain view" observation of the crack rocks located in appellant's car seat did not constitute a search and seizure implicating the Fourth Amendment. Accordingly, we hold that the trial court did not err in overruling appellant's motion to suppress evidence.[3]

## Admission of Evidence

In his third issue, appellant argues that the trial court erred in admitting into evidence a sealed envelope, State's exhibit 4, that contained State's exhibit 5, a sealed Ziploc bag containing the two crack rocks seized from his car by Officer Parker, because "the State failed to prove the beginning and end of the chain of custody."

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Walker v. State*, 321 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2009, pet. dism'd). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without

---

[3] In support of his argument that the trial court erred in denying his motion to suppress evidence, appellant relies on *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710 (2009). However, *Gant* concerns vehicle searches incident to arrest, whereas here, Officer Parker observed the crack rocks in plain view. *See* 556 U.S. at 335–38, 129 S. Ct. at 1714–16. And whether Parker conducted a proper search incident to arrest is not at issue.

reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). When considering a trial court's decision to admit evidence, we will not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996) (internal quotations omitted).

We may not determine whether a trial court erred in the admission of evidence, unless error is preserved for our review. *See Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). To preserve the issue of erroneously admitted evidence, a party must make a timely and specific objection and obtain a ruling from the trial court. TEX. R. APP. P. 33.1(a); *Martinez*, 98 S.W.3d at 193. "The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial [court] of the basis of the objection and give [it] the opportunity to rule on it; and (2) to give opposing counsel the opportunity to respond to the complaint." *Resendez v. State,* 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). To preserve error, a party "must be specific enough so as to 'let the trial [court] know what he wants, why he thinks himself entitled to it, and do so clearly enough for the [trial court] to understand him at a time when the trial court is in a proper position to do something about it.'" *Id.* at 313 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). A party fails to preserve error when the contention urged on appeal does not comport with the specific complaint made in

the trial court. *See Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009); *Rothstein v. State*, 267 S.W.3d 366, 373 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd).

We consider the context of the complaint to determine if the party preserved error. *Resendez*, 306 S.W.3d at 313. If the correct ground for exclusion was obvious to the trial court and opposing counsel, waiver will not result from a general or imprecise objection. *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977). However, if the context shows that a party failed to effectively communicate his argument, then the error is deemed waived on appeal. *Lankston*, 827 S.W.2d at 909.

Here, after the State offered into evidence its exhibits 4 and 5, the following exchange took place:

> [Appellant's Counsel]: . . . Your Honor, maybe I'm confused; but yesterday I believe that both of the envelopes were actually opened. Today [the State] has gone through the whole process of opening the envelope. Do they get resealed every day?
>
> The Court: Regardless, what's your objection?
>
> [Appellant's Counsel]: Well, my objection, well, one, because I will reurge my Motion to Suppress at this time regarding State's Exhibit 5 based upon, you know, lack of probable cause.

| | |
|---|---|
| The Court: | And, I've had an opportunity to review the written Motion to Suppress. Are there any other -- any additional information -- |
| [Appellant's Counsel]: | No. |
| The Court: | -- that you want to present regarding the Motion to Suppress? |
| [Appellant's Counsel]: | No, that's it. |
| The Court: | All right. For purposes of the record, your Motion to Suppress is denied. . . . |
| [Appellant's Counsel]: | Okay, Respectfully, may I -- yes, I still believe *there's a foundation with State's Exhibit 5* because of the fact that it, whether or not this is the actual, the same things, I mean that were -- |
| The Court: | Again, I recognize that you made that objection to the weight not the admissibility. I'm admitting those two items over objection. |

(Emphasis added.)

Although appellant challenges the trial court's admission of both State's exhibits 4 and 5 on appeal, our review of the record reveals that he made no timely and specific objection in the trial court regarding the admission of State's exhibit 4. Accordingly, we hold that appellant did not preserve his issue in regard to State's exhibit 4 for our review. *See* TEX. R. APP. P. 33.1(a); *Martinez*, 98 S.W.3d at 193.

In regard to State's exhibit 5, in addition to "reurg[ing]" his motion to suppress evidence based on a lack of probable cause, appellant complained about

21

the "foundation with State's [e]xhibit 5 because of the fact that it, whether or not [it] is the actual, the same things . . . ." And the trial court "recognize[d]" his "objection to the weight[,] not the admissibility." Assuming, however, without deciding, that appellant preserved for review his chain-of-custody complaint regarding State's exhibit 5 that he now makes on appeal, we conclude that the trial court did not err in admitting the exhibit into evidence.

Chain of custody is a predicate that must be established for the admission of fungible evidence, such as narcotics or test results. *Davis v. State*, 992 S.W.2d 8, 10–11 (Tex. App.—Houston [1st Dist.] 1996, no pet.). To establish the admissibility of such evidence, the proponent "need only prove the beginning and end of the chain of custody; it need not show a 'moment-by-moment account of the whereabouts of evidence from the instant it is seized.'" *Shaw v. State*, 329 S.W.3d 645, 654 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (quoting *Reed v. State*, 158 S.W.3d 44, 52 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd)). This is particularly true if a proponent establishes the chain of custody through to the laboratory. *Gallegos v. State*, 776 S.W.2d 312, 315–16 (Tex. App.—Houston [1st Dist.] 1989, no pet.); *see also Menefee v. State*, 928 S.W.2d 274, 280 (Tex. App.—Tyler 1996, no pet.). "Absent evidence of tampering, issues regarding the chain of custody bear on the weight, rather than on the admissibility, of evidence." *Davis v. State*, 313 S.W.3d 317, 348 (Tex. Crim. App. 2010).

Here, Officer Parker testified that he seized "two small white crack rocks" from "the front [driver's] seat" of appellant's car. Approximately "an hour" or an "hour and a half" after he arrested appellant, he "tagged" the evidence in "the narcotics operation and control center." The crack rocks were then "transport[ed]" "to the lab" for testing. On the first day of trial, Parker "picked [the evidence] up from the lab" and brought it to court. After the first day of trial, and before the admission of State's exhibit 5 into evidence, he took the crack rocks "back to the crime lab and resealed them and turned them back in." The next day, Parker again retrieved the evidence and brought it back to the courtroom.

Officer Parker further testified that he knew that State's exhibit 5 contained "the same . . . crack cocaine that [he] found on [appellant's car] seat" because it was sealed in an envelope, State's exhibit 4, upon which he had written his initials. And the contents of State's exhibit 5 were "in the same or substantially similar condition" as they were when he seized the crack rocks on May 6, 2013.

Rodriguez, who had tested the "beige chunk substance" in State's exhibit 5 at the HPD crime laboratory, testified that evidence in need of testing is "received from a section [at the lab] called centralized evidence receiving." Prior to testing evidence, she "check[s] the envelope . . . [containing] the evidence to make sure there's a seal on it." Rodriguez then takes the evidence to her work area to analyze it.

23

In this case, Rodriguez explained that she received a sealed envelope, State's exhibit 4, that contained State's exhibit 5, a Ziploc bag containing two crack rocks. Once she opened the sealed envelope, she found "a sealed Ziploc [bag], which contain[ed] another Ziploc [bag], which contain[ed] a beige chunk substance." After completing her testing, Rodriguez "sealed the evidence inside of a Ziploc" bag, placed it "inside of the evidence envelope," and "sealed the evidence envelope to be returned to centralized evidence receiving," "where it was then stored in a vault." Rodriguez explained that she knew that the substance admitted into evidence at trial, contained in State's exhibit 5, was the same substance that she had tested because State's exhibit 4, the sealed envelope that contained State's exhibit 5, had written upon it the "incident number" and her initials.

Appellant argues that the State failed to establish the chain of custody of State's exhibit 5 because "[n]o one was called . . . to testify as to who transported the evidence from [the] 'narcotics operation and control center . . . to the lab'" and Officer Parker did not "tag[]" the crack rocks themselves. Contrary to appellant's arguments, however, testimony as to who transported the evidence to the HPD crime laboratory was not required to establish the chain of custody, nor was Parker required to "mark" or "tag" the individual crack rocks. *See Reber v. State*, No. 07-02-0488-CR, 2004 WL 1175484, at *3–4 (Tex. App.—Amarillo May 26, 2004, pet. ref'd, untimely filed) (not designated for publication) (no chain-of-custody

issue where law enforcement officer "did not place an identifying mark on the plastic bag [containing narcotics] itself," but "did put identification upon the envelope in which the plastic bag was placed"); *Caddell v. State*, 123 S.W.3d 722, 727–28 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (rejecting defendant's argument State failed to establish chain of custody because "no one testified that they transferred the evidence bag from the lock box to the lab"); *Young v. State*, No. 01-95-00895-CR, 1996 WL 256594, at *1–2 (Tex. App.—Houston [1st Dist.] May 16, 1996, pet. ref'd) (not designated for publication) (no chain-of-custody issue despite no markings on individual baggies of crack cocaine and marijuana placed in evidence envelope). Further, once the evidence establishes the chain of custody into the lab, as Parker's and Rodriguez's testimony did here, any further objection, as noted by the trial court, goes to the weight of the evidence, rather than to its admissibility. *See Menefee*, 928 S.W.2d at 280.

To the extent that appellant asserts that Officer Parker may have tampered with State's exhibit 5 by taking it to the lab to store overnight after the first day of trial, he does not direct us to any affirmative evidence showing that State's exhibit 5 was actually tampered with or changed in any way. *See Hall v. State*, 13 S.W.3d 115, 120 (Tex. App.—Fort Worth 2000, pet. dism'd) (absent affirmative evidence of commingling or tampering, speculative or theoretical breaches in chain of custody do not affect admissibility); *Irvine v. State*, 857 S.W.2d 920, 925 (Tex.

App.—Houston [1st Dist.] 1993, pet. ref d) (holding defendant's assertion "possibility" original baggies "supplemented by other baggies" impacted only weight of evidence, not admissibility); *see also Foley v. State*, Nos. 01-11-00113-CR, 01-11-00114-CR, 2012 WL 1564685, at *2–4 (Tex. App.—Houston [1st Dist.] May 3, 2012, pet. ref'd) (mem. op., not designated for publication) ("Appellant's speculation that the evidence might have been tampered with or altered, without more, does not render the chain-of-custody evidence insufficient.").

Accordingly, we hold that the trial court did not err in admitting State's exhibit 5 into evidence.

We overrule appellant's third issue.

## Voir Dire and Jury Charge Error

In his second issue, appellant argues that the trial court erred in making certain "remarks" during voir dire of the venire panel and subsequently instructing the jury in its charge on the meaning of "beyond a reasonable doubt" because its comments and instruction were "improper, misleading, and confusing," resulting in a "lessen[ing] [of] the State's burden of proof." He asserts that the trial court's error is "structural" and "not subject to a harmless error review."

In regard to the trial court's charge to the jury, appellant complains that the trial court instructed the jury as follows:

26

> The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.

> It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt.

However, appellant does not provide a clear argument or direct us to any authority, establishing that the complained-of instruction resulted in a lessening of the State's burden of proof. *See* TEX. R. APP. P. 38.1(i) (requiring appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities"). Instead, appellant merely cites the standard of review for jury charge error and quotes the complained-of instruction. Such is not sufficient to properly present an issue to this Court for review. *See Watkins v. State*, 333 S.W.3d 771, 779 (Tex. App.—Waco 2010, pet. ref'd) ("[A] generic statement regarding the standard of review" not adequate on issue of whether "trial court erred by not including an 'impeachment instruction' in the jury charge . . . ."); *Torres v. State*, 979 S.W.2d 668, 674 (Tex. App.—San Antonio 1998, no pet.) (point of error "inadequately briefed" where defendant "advance[d] no argument as to why the charge . . . [was] erroneous"). Accordingly, we hold that appellant has waived this portion of his second issue. *See Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (appellate court has no obligation to consider inadequately briefed points of error).

27

In regard to the trial court's "remarks" made during voir dire of the venire panel, appellant complains that the trial court made the following comments:

The Court: Let's also talk about the presumption of innocence. How many of you-all have heard of the presumption of innocence? A person is presumed innocent unless and until the State proves their guilt beyond a reasonable doubt. . . .

. . . .

. . . Again, I've told you the State's done the accusing, they have to do the proving. So, let's talk about the burden of proof. The burden of proof in a criminal case is beyond a reasonable doubt. Anyone want to guess what the definition of beyond a reasonable doubt is, or anybody know the definition of beyond a reasonable doubt? Good. Because there is no definition of beyond a reasonable doubt.

I can tell you a couple of things about beyond a reasonable doubt, first of all, many years ago our appellate court justices attempted to come up with a definition of beyond a reasonable doubt, and they quickly recognized that it's something that shouldn't be defined. They felt like it should be up to individual jurors to determine their level of satisfaction beyond a reasonable doubt.

Now, I can tell you that beyond a reasonable doubt is the highest burden of proof that we have in our legal system. How many of you-all walked near the fancy courthouse across the street, big dome on top? Over in the civil courthouse, lawyers argue about

28

millions of dollars every day; and the burden of proof over at the civil courthouse is by a preponderance of the evidence. A greater weight of the credible evidence, the shifting of the scale to over 50 percent gets you all the money over in the civil courthouse. And in the family courthouse across the street, people talk about child custody cases every day. Children can be removed from their parents by clear and convincing evidence, that's the standard of proof and that's less than beyond a reasonable doubt.

So, by illustration, using those as examples, we've got preponderance of the evidence, clear and convincing evidence; and in a criminal court, it is beyond a reasonable doubt. Now, I tell you that because while it is the highest burden of proof that we have, it is not proof to a hundred percent certainty or proof beyond all possible doubt. . . .

. . . .

All right. I would say that probably the reason that we have beyond a reasonable doubt and not beyond all doubt as a standard of proof is because ordinarily, well, it's almost an impossible standard. When we talk about proof to a hundred percent certainty, I would say that most people would feel like if you didn't see it with your own eyes, you didn't actually witness it, it would be hard for you to be convinced to a hundred percent certainty. So, it's not a hundred percent certainty. I can also tell you that there's no requirement that the State bring you a certain type of evidence or a certain number of witnesses, for example.

I can tell you in the 30 years that I've been down here, Prosecutors have proven cases with physical evidence or circumstantial evidence such as DNA, fingerprints, and no eyewitness; and the jurors are satisfied beyond a reasonable doubt.

Any *CSI* fans in the group? There always are. Let me just tell you this, I imagine this isn't going to play out like an episode from *CSI*, just a guess, based on my experience. It won't be wrapped up, I don't know, in 30 minutes including commercials, right? Usually they're able to -- the last episode I watched of *CSI* was actually, I think, a murder case where the perpetrator was caught and the case was solved based on an exotic bird feather that fell on the scene that apparently belonged to an exotic bird owned by the murderer, so it was solved through DNA evidence and some sort of expert on bird feathers. I haven't seen that ever play out in the criminal courthouse. So, put those episodes of *CSI* out of your mind. This is real life and we're going to be dealing with real life people, real-life circumstances.

That being said, physical evidence alone might be sufficient for the State to meet their burden of proof. There are cases that are proven with the testimony of one single witness if that witness is believed by the jurors to be credible, and they prove every element of the offense beyond a reasonable doubt. The bottom line is it's the quality of the evidence, not the quantity of the evidence. So, you as jurors are going to be asked to determine the credibility of the witnesses and make your decision as to

30

whether or not the Defendant is actually guilty based on the evidence that you hear.

. . . At the end of the process, I'm going to give you the law that applies in this case, you'll go back to the jury room with your fellow jurors, and you'll make a decision as to whether or not the State's proven the Defendant's guilt[] beyond a reasonable doubt. Makes sense to everybody? Good.

All right. So, your job is to determine the credibility of the witnesses. My job, of course, is to give you the law that applies; and that will be given to you in writing at the end of the trial. Let's talk about -- I've told you multiple times that the State has done the proving. I told you they've done the accusing, they have to do the proving. I've told you it's beyond a reasonable doubt. That means, obviously, that [defense counsel] is not required to bring you any evidence. Now, she's an excellent attorney, and I expect that she will do a very good job, but there's no requirement that the Defendant or his attorney bring you any evidence at all. You look to this side of the table for all the evidence. And I promise you [the State] knows exactly what his job is, and he accepts that responsibility.

. . . .

Now, at the end of the first phase of the trial, you'll go back to the jury room; and you'll make a decision based on the evidence that you hear. Is the Defendant actually guilty of this offense? Or is he not guilty based on that burden of proof, beyond a reasonable doubt? If you-all find a defendant not

31

guilty, the trial is over; and we all go home. If you find a defendant guilty in any criminal trial, we would then move on to the second phase of the trial, which is the punishment phase.

Now, I consider the guilt/innocence phase to be the objective phase of the trial. And I tell you that because in that portion of the trial, you're asked to objectively evaluate the evidence to determine whether or not the Defendant actually committed this offense. The punishment phase is more subjective. And I tell you that because during the punishment phase of the trial, you're looking at evidence a little bit differently. You may be looking at motive in the punishment phase of a trial. You may be looking at how the offense was carried out, what was the Defendant's demeanor? Who was harmed as a result of this offense? What is the person's background, those are things that are completely irrelevant to guilt/innocence but can be highly relevant as to what the appropriate punishment should be.

As revealed by the above quoted portion of the record, appellant did not timely and specifically object to the trial court's comments and obtain an adverse ruling. *See* TEX. R. APP. P. 33.1(a); *Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App. 1999) (holding defendant waived complaint about trial court's explanation of beyond-a-reasonable-doubt standard during voir dire by failing to renew objection when trial court repeated explanation); *Marshall v. State*, 312 S.W.3d 741, 743 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (to preserve

error for review necessary to object to trial court's voir dire comments). Because appellant did not object to any part of the trial court's voir dire to the venire panel, he, on appeal, may only complain of fundamental error. *See McLean v. State*, 312 S.W.3d 912, 915 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("[A]s a threshold matter, we address whether appellant preserved error through an objection in the trial court and, if not, whether the error was fundamental error affecting a substantial right and thus required no objection."); *Marshall*, 312 S.W.3d at 743–45 (after noting defendant failed to object to "court's comments during voir dire," determining whether comments constituted fundamental error); *see also* TEX. R. EVID. 103(e). Fundamental error occurs when a "trial [court's] comments r[i]se to such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury." *Jasper v. State*. 61 S.W.3d 413, 421 (Tex. Crim. App. 2001).

We note that this Court has previously concluded that comments, made by both prosecutors and judges during voir dire, similar to the complained-of comments in this case, did not rise to the level of fundamental error. *See, e.g.*, *Haro v. State*, 371 S.W.3d 262, 263–66 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (holding trial court's voir dire comment, "you, individually, g[et] to decide what beyond a reasonable doubt means to you," not fundamental error (internal quotations omitted)); *McLean*, 312 S.W.3d at 915–18 (holding trial court's voir dire comments, which included "the permissibility of convicting a defendant based

on a single witness," not fundamental error); *Marshall*, 312 S.W.3d at 742–45 (holding trial court's voir dire comments, "the Legislature has not given . . . a definition" of reasonable doubt and "*the Legislature figures everybody is reasonable and they would know a reasonable doubt when they see it*," not fundamental error (internal quotations omitted)); *Rogers v. State*, 795 S.W.2d 300, 306 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd) (holding trial court's voir dire comments, "the bottom line is going to be what beyond a reasonable doubt is to you" and "the legislature has not defined th[e] term," not fundamental error (internal quotations omitted)); *see also Ali v. State*, No. 05-02-01235-CR, 2003 WL 21350250, at *2 (Tex. App.—Dallas June 11, 2003, pet. dism'd) (not designated for publication) (holding prosecutor's voir dire question, whether "the venire . . . would require physical evidence or more than one witness to convict," not fundamental error).

Here, we cannot conclude that the trial court's voir dire comments negated the presumption of innocence or vitiated the impartiality of the jury. *See Jasper*, 61 S.W.3d at 421. Accordingly, we hold that the complained-of voir dire comments made by the trial court do not rise to the level of fundamental error, and, thus, appellant has waived his complaint about them.

## Modification of Judgment

We note that the trial court's written judgment does not accurately comport with the record in this case in that it states:

> Defendant entered a plea and filed a written election to have the jury assess punishment. The jury heard evidence relative to the question of punishment. The Court charged the jury and it retired to consider the question of punishment. After due deliberation, the jury was brought into Court, and, in open court, it returned its verdict as indicated above.

The record, however, indicates that appellant, after the jury found him guilty, and with the State's consent, changed his election to have the trial court, not the jury, assess his punishment. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 2(b) (Vernon Supp. 2014) ("If a finding of guilt is returned, the defendant may, with the consent of the attorney for the state, change his election of one who assesses the punishment."); *Gibson v. State*, 549 S.W.2d 741, 742 (Tex. Crim. App. 1977) (once defendant elects whether jury or trial court is to assess punishment, he may change election if State consents).

"[A]ppellate court[s] ha[ve] the power to correct and reform a trial court judgment 'to make the record speak the truth when it has the necessary data and information to do so, or make any appropriate order as the law and nature of the case may require.'" *Nolan v. State*, 39 S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (quoting *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet ref'd)). Although neither party addresses the inconsistency

between the trial court's written judgment and the record in this case, based on our review, we conclude that the portion of the judgment regarding who "assessed" punishment does not accurately comport with the record.[4] *See Asberry*, 813 S.W.2d at 529–30 (authority to correct incorrect judgment not dependent upon request of any party).

Accordingly, we modify the trial court's judgment to uncheck the box next to:

> Defendant entered a plea and filed a written election to have the jury assess punishment. The jury heard evidence relative to the question of punishment. The Court charged the jury and it retired to consider the question of punishment. After due deliberation, the jury was brought into Court, and, in open court, it returned its verdict as indicated above.

We further modify the trial court's judgment to check the box next to: "Defendant elected to have the Court assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above." *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993).

---

[4] We note that the first page of the trial court's judgment, under the section titled "Punishment Assessed by," accurately states "COURT."

## Conclusion

We affirm the judgment of the trial court as modified.

Terry Jennings
Justice

Panel consists of Justices Jennings, Bland, and Brown.

Do not publish.  TEX. R. APP. P. 47.2(b).